No. 27,042.

W. S. FULTON, *Appellee*, v. THE FARMERS NATIONAL BANK, *Appellant.*

SYLLABUS BY THE COURT.

1. LIMITATIONS OF ACTIONS—*Nature of Action—Rescission of Contract for Nonperformance.* A customer of a national bank having money to invest was advised by the cashier to lend it to a person named. He drew his check for $10,000 and left it with the bank under an arrangement that it was to be held until a note for the amount with a deed to a quarter section securing it should be presented, and then cashed and the proceeds given to the maker. He sued the bank for the amount, alleging that it had paid out the money without the security referred to having been furnished, for a note which had been materially altered by the cashier without the consent of the maker. It is held that the action is to be regarded as one for rescission of a contract for nonperformance, with restoration of the amount lost, and the two-year statute of limitations for actions founded on tort does not apply.

2. BANKS AND BANKING—*National Banks—Power to Contract.* The entrance into such a contract as that described in the foregoing paragraph is not beyond the power of a national bank.

Alteration of Instruments, 2 C. J. pp. 1174 n. 18, 1199 n. 24, 1215 n. 58; L. R. A. 1915A 166; 44 A. L. R. 1247, 1249; 1 R. C. L. 974, 977. Banks and Banking, 7 C. J. p. 817 n. 12; 3 R. C. L. 423. Contracts, 13 C. J. p. 672 n. 92; 6 R. C. L. 1022. Limitation of Actions, 37 C. J. p. 756 n. 25.

Fulton v. Farmers Nat'l Bank.

3. CONTRACTS—*Waiver of Breach—Misrepresentation Inducing Acceptance.* Under the facts of the case it is held that the acceptance by the plaintiff of the note referred to, knowing the security had not been procured, was not such a waiver of the security as to eliminate that phase of the case, inasmuch as the cashier promised at the time to procure it, and practically as a part of the same transaction said it had been obtained and would be held by the bank.

4. ALTERATION OF INSTRUMENTS—*Materiality—Change in Payee and Provision Concerning Interest.* In the case above referred to change in the payee of the note and in the provision concerning interest are held to have been material. And it having been established that the changes were made by the cashier without the consent of the maker, the note was not one the receipt of which authorized the bank to cash the plaintiff's check and pay the money to the signer of the note.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed January 8, 1927. Affirmed.

*Guy L. Hursh,* of Topeka, for the appellant.
*Leonard S. Ferry* and *Edwin A. Austin,* both of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: .W. S. Fulton brought this action against the Farmers National Bank, of Topeka, to recover $10,000 and interest alleged to have been lost by him through the misconduct of G. W. Shimeall, its former cashier. He recovered judgment, and the defendant appeals.

The plaintiff's version of the transaction is briefly this: He had done business with the bank nearly all the time since it was organized. In November, 1922, some bonds which he held matured and were paid, and he deposited the proceeds in the bank. Shimeall, the cashier, talked with him about reinvesting the money. The plaintiff told him if the bank had some good investments he would consider the matter, although he preferred government bonds. Shimeall asked him to take up a loan of one B. F. Ellington for $10,000. Later he rather urged the plaintiff to lend that amount to Ellington, saying he was absolutely good and would give a lien on a quarter section of Oklahoma farm land as security. The plaintiff agreed to make the loan. On December 2, 1922, he drew his check for the amount, payable to the bank, and left it with Shimeall, the agreement being that it was not to be cashed until Ellington's note, secured by a deed to the quarter section of Oklahoma land, had been delivered. About two weeks later a note for $10,000, dated Decem-

ber 2, 1922, due in nine months, signed by Ellington, was given to the plaintiff by Shimeall, who promised to procure the deed to the Oklahoma land, and who shortly afterwards told him the bank had the deed and would hold it. No deed was in fact ever executed to secure the note, nor was security given in any form. The note when signed by Ellington and given to Shimeall was made payable to the bank. Shimeall, without the knowledge or consent of Ellington changed it by inserting in front of the name of the bank the words "W. S. Fulton at," and by changing it so as to require interest at eight per cent from date instead of ten per cent from maturity. Shortly before its maturity the note was placed with the bank for collection. It was never paid. The plaintiff made a trip to California and saw Ellington. He made a demand on the bank for his money, tendering back the note. The note was indorsed in blank by Shimeall at the time of its delivery to the plaintiff.

The jury returned answers to some fifteen questions. The findings, of which those numbered 1, 4 and 7 were attacked as not supported by the evidence, may be thus summarized:

(1) Shimeall was acting as cashier in the transactions referred to.

(2) The plaintiff when he delivered the check to Shimeall instructed him to hold it until the security was furnished.

(3) The conversation between the plaintiff and Shimeall about the delivery of the deed to the Oklahoma land as security took place as a part of the transaction in which the plaintiff gave his check.

(4) The changes in the note were made by Shimeall after its execution without Ellington's consent.

(5) Ellington signed the note and left it in Shimeall's hands to procure a loan of $10,000.

(6) Ellington and Shimeall were jointly interested in procuring the loan.

(7) Ellington did not authorize the changes in the note.

(8) Ellington received the benefits of the $10,000 procured by the execution of the note.

(9) Shimeall did not hand the plaintiff the note at the same time the plaintiff gave him the check.

(10) The plaintiff did not place the check in the hands of Shimeall and instruct him to deliver the proceeds to Ellington when the latter delivered the note to him for the plaintiff.

(11) The bank derived no benefit from the transactions between the plaintiff, Shimeall and Ellington, and retained no portion of the $10,000 represented by the check.

(13) None of the officers of the bank except Shimeall had any knowledge or notice of the transactions between the plaintiff, Shimeall and Ellington before their completion.

Fulton v. Farmers Nat'l Bank.

(15) The plaintiff accepted the promissory note from Shimeall with the knowledge that no deed to Oklahoma land had been procured as security for the note.

(16) At the time the plaintiff accepted the note Shimeall promised to procure such a deed for the plaintiff.

(17) The plaintiff accepted the note relying on Shimeall's promise to procure the deed.

1. The defendant contends that the action is based on a tort and is barred by the two-year statute of limitation. The case was tried on a second amended petition. The first petition, filed March 14, 1924, merely alleged that the plaintiff delivered his check to the bank, by means of which the bank diverted the amount thereof from his deposit, no details being given. The first amended petition, filed July 5, 1925, set out the alteration of the note, but not the cashing of the check in violation of instructions, a matter which was specifically pleaded for the first time in the second amended petition, filed August 8, 1925. The contention is that until then no cause of action was stated, at least none of the nature of that now relied upon, and therefore the statute of limitations had run against it. We think the action is to be regarded as one for damages for the breach of a contract, or perhaps more accurately, as one for rescission for failure to perform, or for nonperformance in accordance with the terms of the contract, with the recovery of the money of which the plaintiff had been deprived. On that theory the statute of limitation would not have run although the action is considered as having been begun with the filing of the second amended petition.

2. On this phase of the matter the defendant argues that the entrance into such a contract as would otherwise sustain the judgment would be beyond the power of a national bank and therefore its breach would not warrant the recovery. In that aspect we think the case is within the principle of *Bank v. Bank*, 106 Kan. 303, 187 Pac. 697, and 111 Kan. 682, 208 Pac. 636. Although here the bank, as found by the jury, derived no profit from the transaction involved, and retained no part of the plaintiff's money, it could properly, for the accommodation of a customer, undertake to act as bailee or escrow holder on terms agreed upon, and having entered into such an arrangement would violate its contractual duty to him by handling the matter in a different way from that agreed upon, to his loss. In the syllabus of the opinion in the case cited, on its first appearance here, the transaction there involved—the accepting of

papers to be delivered on certain conditions—was said to be within the powers of a national bank, and in the first words of the syllabus at its second appearance the bank was spoken of as having undertaken a bailment, which is contractual.

3. The defendant urges that inasmuch as the plaintiff, as found by the jury, accepted the note knowing that the deed to the Oklahoma land had not been procured, he waived the requirement in that regard. It is to be borne in mind, however, that the jury also found that Shimeall promised at the time to procure the deed and the plaintiff relied on the promise. And the plaintiff testified, and the jury must be presumed to have believed the testimony, that after he had received the note (how long after is not stated, but the context seems to warrant the inference that it was practically at once) Shimeall told him the bank had the deed and would hold it. Granting that ordinarily the cashier could not bind the bank by such a promise, we think it may fairly be said that the promise and the statement that the bank had the deed may be regarded as parts of a single transaction. Under these circumstances the delivery was a violation of the bank's undertaking.

4. The defendant urges further that the changes made in the note after its execution were not under the circumstances material and that Shimeall had no such relation to the paper as to give the alteration the effect of annulment. The rule is invoked that the substitution of one name for another is not a material alteration where it amounts to nothing more than inserting the real name of the party intended. This does not appear to be the situation presented. Ellington's testimony was in effect that he intended signing a note payable to the bank. The contrary was not conclusively shown. The relations between Ellington and Shimeall or the bank are not entirely clear, and the jury must be deemed to have accepted any tenable theory that would support the judgment. The change in the rate and time of interest was obviously material, and the unlikelihood of the signer supposing no interest was to be paid until after maturity does not change its character in this regard. (*Insurance Co. v. Martindale*, 75 Kan. 142, 88 Pac. 559; 2 C. J. 1174.)

It is argued that Shimeall was in effect a stranger to the note and that the changes made by him amounted (if unauthorized, as the jury found) to spoliation rather than alteration; that his act was not that of the bank—that the bank had no power to authorize

him to make such an alteration; and that only the maker of the note could complain of the change. It is unnecessary to treat in detail the questions so suggested. The note delivered by the bank to the plaintiff was not on its face the note Ellington had signed. He was not liable on it in that form. And assuming that the change was made under such circumstances that he was liable upon the instrument as originally executed, it was not the note it appeared to be when accepted by the plaintiff. In any event it was not a note the delivery of which to the plaintiff authorized the cashing of his check. The pursuit of this course was a violation of the terms of the agreement—an appropriation of the plaintiff's money without the conditions of its deposit having been met.

The defendant complains of the giving and refusal of instructions concerning the effect of the changes made in the note. In view of what has already been said it is unnecessary to pass upon them in detail. In the pleadings and evidence there was a direct conflict as to whether Ellington consented to the change in the note by Shimeall. The jury found there was no consent, and inasmuch as upon the grounds already stated we regard this as preventing the delivery of the note to the plaintiff from authorizing the appropriation of the proceeds of the plaintiff's check, there is no occasion to discuss the general rules concerning the alteration or spoliation of instruments.

The judgment is affirmed.

HARVEY, J., not sitting.